UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ABDIRAHMAN H. HAJI-HASSAN,          )<br>                                                             )<br>               Petitioner,              )<br>v.                                                       )     No. 2:23-cv-00355-LEW<br>                                                             )<br>BEN BEAL, WARDEN MAINE      )<br>CORRECTIONAL CENTER,          )<br>                                                             )<br>               Defendant.              ) | |

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

In the Cumberland County Superior Court, Petitioner Abdirahman H. Haji-Hassan was convicted of intentional or knowing murder and sentenced to 39 years' imprisonment. Petitioner filed a Petition for Writ of Habeas Corpus (ECF No. 1). In his Recommended Decision on 28 U.S.C. § 2554 Petition (ECF No. 8), Magistrate Judge John C. Nivison recommends that the Court dismiss the Petition and deny a certificate of appealability. Petitioner timely filed an Objection (ECF No. 9).

After *de novo* review, I adopt the Recommended Decision. My analysis below assumes the reader's familiarity with the facts, *see* Recommended Decision at 2–6, and is limited to Petitioner's Objection, which concerns his *Batson* and Confrontation Clause claims. I begin with the *Batson* claim.

A.     The *Batson* Claim

Petitioner's *Batson* claim stems from the prosecutor's use of a peremptory challenge during jury selection to exclude a Russian immigrant. *See generally Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner argues that trial counsel's failure to object under *Batson* constituted ineffective assistance of counsel.

As a threshold matter, Petitioner argues that the Recommended Decision "comingles the procedural default and exhaustion doctrines and misstates [his] argument" by stating that Petitioner acknowledged that his *Batson* claim was procedurally defaulted. Obj. at 4. However, in the Recommended Decision, Judge Nivison properly concluded that Petitioner's *Batson* claim was exhausted but procedurally defaulted.

Section 2254 requires Petitioner to "exhaus[t] the remedies available in the courts of the State" before a federal court may issue a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A). "[S]tate prisoners cannot simply present their claims to the state trial court; they must 'invoke[ ] one complete round of the State's established appellate review process.'" *Currie v. Matesanz*, 281 F.3d 261, 267 (1st Cir. 2002) (second alteration in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Even if a state prisoner failed to properly raise a claim in state court, a claim will be considered exhausted when a state procedural rule bars consideration of that claim because there is no longer any remedy under state law. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (explaining that a habeas petitioner "who has defaulted his federal claims in state court meets the technical requirements for exhaustion" because "there are no state remedies any longer 'available' to him" (quoting 28 U.S.C. § 2254(b))); *see also Engle v. Isaac*, 456 U.S. 107,

125–26 n.28 (1982). While a prisoner has technically exhausted his remedies by failing to comply "with the deadline for seeking state-court review," the prisoner is not "automatically entitle[d]" to litigate those claims in federal court because "if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Where exhaustion has obtained through a procedural default, the habeas petitioner must show cause for that default and prejudice arising therefrom before the federal court may reach the merits of his habeas claims." *Hall v. DiPaolo*, 986 F.2d 7, 10 (1st Cir. 1993) (per curiam).

Petitioner raised his national-origin *Batson* claim in the Superior Court, A-212, but he did not present this argument to the Law Court, A-216–35. Because Maine has procedural rules that bar Petitioner from now raising this claim in state court, Petitioner has exhausted his remedies on the *Batson* claim because there is no longer any relief available under Maine law. *See* 15 M.R.S. § 2128(3) ("All grounds for relief from a criminal judgment or from a post-sentencing proceeding must be raised in a single post-conviction review action and any grounds not so raised are waived unless the Constitution of Maine or the Constitution of the United States otherwise requires or unless the court determines that the ground could not reasonably have been raised in an earlier action."); *State v. Chesnel*, 25 A.3d 946, 949 (Me. 2011). Though Petitioner's *Batson* claim is exhausted, it is also procedurally defaulted. *See Woodford*, 548 U.S. at 93.[1]

---

[1] Petitioner's argument that the Law Court might decide that the interests of fairness and justice favor hearing the *Batson* claim is unpersuasive. Petitioner's cited authorities do not suggest that Maine State courts would deviate from the clear rules of waiver codified in Maine State law. *See* Obj. at 8 (citing *State*

3

This procedural default generally bars consideration of the *Batson* claim. *See Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Here, there is not cause to excuse this procedural default because it stems from a petition for discretionary review before the Law Court, rather than from ineffective assistance of counsel at the initial-review collateral proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (holding that only inadequate "assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default"). Petitioner has failed to make a showing of a fundamental miscarriage of justice because that requires a showing of actual innocence, which he has not attempted to demonstrate. *See Gunter v. Maloney*, 291 F.3d 74, 83 (1st Cir. 2022) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

**B.      The Confrontation Clause Claim**

At trial, Chief Medical Examiner Mark Flomenbaum testified that photographs and x-rays showing two linear excoriations and two lead bullet fragments in Petitioner's leg were consistent with a gunshot wound inflicted six to ten weeks beforehand; that timeframe includes the day when the victim was killed. Petitioner claims that the trial court's restrictions on cross-examining Dr. Flomenbaum amounted to a violation of his Sixth

---

*v. Bard*, 181 A.3d 187, 201 (Me. 2018) (per curiam)). In any event, I agree with Judge Nivison's analysis that even if the *Batson* claim was unexhausted and not procedurally defaulted, a stay and abeyance is inappropriate because the *Batson* claim would fail on the merits. Recommended Decision at 11–19.

Amendment rights. More specifically, Petitioner wanted to cross-examine Dr. Flomenbaum about his removal from being the Chief Medical Examiner in Massachusetts, which was "attributed to fundamental operational and administrative failures." *State v. Haji-Hassan*, 182 A.3d 145, 148 (Me. 2018) (internal quotation marks omitted).[2] Petitioner objects to the Recommended Decision's analysis of this claim and argues that the limitations on cross-examination prevented him from exploring a prototypical form of potential bias. The gist of Petitioner's theory is that he was unable to convey to the jury that Dr. Flomenbaum may have had limited employment prospects because of his removal from the Massachusetts position, so he "might owe some fealty to the State" of Maine. Obj. at 10.

The Sixth Amendment's Confrontation Clause "guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting U.S. Const. amend. VI). This "includes the right to conduct reasonable cross-examination." *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (per curiam). "[T]rial judges retain wide latitude" to "impose reasonable limits on" "cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. A defendant demonstrates a violation

---

[2] Petitioner faults the Recommended Decision's silence as to certain findings about Dr. Flomenbaum's removal, such as his failure to communicate fully and frankly with his superiors. *See* Obj. at 7–8. These additional findings, however, do not demonstrate that the Law Court unreasonably applied Supreme Court precedent because the probative value of these findings "with regard to [Dr. Flomenbaum's] character for untruthfulness" was slight at best, such that the trial court's limitations on cross-examination were reasonable. *Haji-Hassan*, 182 A.3d at 151.

of the Confrontation Clause "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Id.* at 680 (ellipses in original) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

Judge Nivison correctly decided that the Law Court reasonably applied Supreme Court precedent in holding that the trial court's limitations on cross-examination did not violate the Confrontation Clause. Recommended Decision at 24–26. The Law Court reasoned that Petitioner's intended cross-examination about Dr. Flomenbaum's removal concerned his failure as an administrator, rather than his performance as a pathologist. *See Haji-Hassan*, 182 A.3d at 148. Because Dr. Flomenbaum did not act as an administrator within Petitioner's case, the Law Court sensibly concluded that the probative value of cross-examination into Dr. Flomenbaum's prior shortcomings as an administrator was slight, at best. *See id.* at 152. And Petitioner was able to explore Dr. Flomenbaum's potential bias in favor of the State by asking about his current employment with the State. *See id.* at 151. Accordingly, the Law Court concluded that the limitation on cross-examination did not violate the Sixth Amendment. This was a reasonable application of *Van Arsdall* and related Supreme Court cases applying the Confrontation Clause.

Petitioner contends that the Law Court's distinction between "administrative" and "non-administrative" conduct amounted to an unreasonable application of Supreme Court precedent. While Supreme Court precedent has not drawn such a line, that distinction was

a reasonable application of *Van Arsdall*, which calls for a highly case-specific inquiry.[3] The distinction highlighted why Petitioner's desired cross-examination was "only marginally relevant" and thus permissibly subject to limitation without offending the Sixth Amendment. *See Van Arsdall*, 475 U.S. 679.[4]

For these reasons, the Recommended Decision (ECF No. 8) is **AFFIRMED** and **ADOPTED**. The Petition for Writ of Habeas Corpus (ECF No. 1) is **DISMISSED** with prejudice. A certificate of appealability will not issue because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.

Dated this 5th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

---

[3] Because this is such a case-specific inquiry, Petitioner's reference to various cases finding violations of the Sixth Amendment is unpersuasive. And the Law Court's decision in *State v. Coleman* holding that evidence about Dr. Flomenbaum's administrative shortcomings and lack of candor was admissible under Maine's Rules of Evidence does not demonstrate that reasonable jurists could disagree about the merits of Petitioner's Confrontation Clause claim in this case. 181 A.3d 689, 698–700 (Me. 2018). There, Dr. Flomenbaum "supervised or personally undertook the collection of the sexual assault kit and the other evidence from the daughter's autopsy." *Id.* at 698–99. Thus, the Law Court reasoned that evidence of "Dr. Flomenbaum's administrative shortcomings and lack of candor with his superiors when he was the Chief Medical Examiner in another state [were] relevant to his performance of his administrative duties as the State of Maine's Chief Medical Examiner." *Id.* at 699.

[4] Petitioner also argues that the Law Court unreasonably applied Supreme Court precedent by making its Confrontation Clause analysis dependent on the standard of review for evidentiary rulings. *See* Petition at 72. I disagree. The Law Court quoted *Van Arsdall* to explain that trial judges have wide latitude to impose reasonable limitations on cross-examination before determining that Petitioner's Sixth Amendment rights were not violated by the trial court's restrictions on cross-examination. *See Haji-Hassan*, 182 A.3d at 152. The Law Court was incorporating its previous discussion about the relevance of the intended cross-examination into its analysis of the Sixth Amendment claim.